Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HAAS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>NTN BUZZTIME, INC., ALLEN WOLFF, MICHAEL GOTTLIEB, RICHARD SIMTOB, and SUSAN MILLER,<br><br>　　　　Defendants. | Case No. **'20CV2123 BAS JLB**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Haas ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1.　　Plaintiff brings this action against NTN Buzztime, Inc. ("NTN Buzztime" or the "Company") and the members of NTN Buzztime's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to merge with Brooklyn ImmunoTherapeutics LLC ("Brooklyn") through BIT Merger Sub, Inc. (the "Proposed Transaction").

2. On August 13, 2020, NTN Buzztime announced that it had entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement") pursuant to which Brooklyn's members will exchange their equity interests in Brooklyn for shares of NTN Buzztime common stock representing between approximately 94.08% and 96.74% of the outstanding common stock of NTN Buzztime, with NTN Buzztime's current stockholders owning between 5.92% and 3.26% of the outstanding common stock of the combined company. Under the terms of the Merger Agreement, the percentages of aggregate ownership are adjustable based the amount of Brooklyn's cash and cash equivalents at closing and the amount by which NTN Buzztime's net cash is less than zero at closing.

3. Following the announcement of the Proposed Transaction, on September 18, 2020, NTN Buzztime entered into an asset purchase agreement (the "Asset Purchase Agreement") with eGames.com Holdings LLC ("eGames.com"), pursuant to which NTN Buzztime agreed to sell all of its right, title and interest in and to the assets relating to the Company's business of licensing its interactive entertainment network and services and the tablets and related equipment used therein to eGames.com.

4. On October 2, 2020, defendants filed a Form S-4 Registration Statement (the "S-4") with the SEC. The S-4 is materially deficient and misleading because, *inter alia,* it fails to disclose material information regarding: (i) the Company's and Brooklyn's financial projections and the data and inputs underlying the financial analyses that support the fairness opinion provided by the Company's financial advisor, Newbridge Securities Corporation ("Newbridge"); and (ii) the

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

background of the Proposed Transaction.  Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

5. The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of NTN Buzztime.

10. Defendant NTN Buzztime is a Delaware corporation, with its principal executive offices located at 1800 Aston Avenue, Suite 100, Carlsbad, California 92008.  NTN Buzztime's common stock trades on the NYSE American under the ticker symbol "NTN."

11. Defendant Allen Wolff has served as the Company's Chief Executive Officer since January 2020, as Chairman of the Board since April 2020, and as a director of the Company since January 2020.

12. Defendant Michael Gottlieb has served as a director of the Company since November 2019.

13. Defendant Richard Simtob has served as a director of the Company since July 2017.

14. Defendant Susan Miller has served as a director of the Company since August 2019.

15. Defendants identified in paragraphs 11-14 are referred to herein as the "Board" or the "Individual Defendants."

16. Relevant non-party Brooklyn is a privately held clinical-stage biopharmaceutical company focused on exploring the role that cytokine-based therapy can have on the immune system in treating patients with cancer.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

17. NTN Buzztime delivers interactive entertainment and innovative technology to its partners in a wide range of verticals – from bars and restaurants to casinos and senior living centers. By enhancing the overall guest experience, the Company seeks to help its hospitality partners acquire, engage, and retain patrons.  Through social fun and friendly competition, NTN Buzztime's platform creates bonds between its hospitality partners and their patrons, and between patrons themselves.

Through its uniquely crafted experience the Company increases dwell time, revenue, and repeat business for venues – and has also created a large and engaged audience which it connects with through its in-venue television network. Over 1 million hours of trivia, card, sports and arcade games are played on the Company's network each month.

18. NTN Buzztime generates revenue by charging subscription fees to partners for access to the Company's 24/7 trivia network, by charging equipment fees to select partners for use of tablets and other equipment, by selling and leasing tablet and hardware equipment for custom usage beyond trivia/entertainment, by selling digital-out-of-home advertising direct to advertisers and on national ad exchanges, by licensing Company entertainment and trivia content to other parties, and by providing professional services such as custom game design or development of new platforms on NTN Buzztime's existing tablet form factor.

19. On August 13, 2020, NTN and Brooklyn issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> CARLSBAD, Calif. and BROOKLYN, N.Y., Aug. 13, 2020 -- NTN Buzztime, Inc. (NYSE American: NTN) and Brooklyn ImmunoTherapeutics LLC ("Brooklyn"), a privately-held biopharmaceutical company focused on exploring the role that cytokine-based therapy can have in treating patients with cancer, today announced that the companies have entered into a definitive merger agreement. If approved by the stockholders of NTN Buzztime and the beneficial holders of the Class A membership interests of Brooklyn, Brooklyn will merge with a wholly-owned subsidiary of NTN Buzztime in an all-stock transaction. Following closing, which the parties expect will occur in the fourth quarter of 2020, the combined company will continue under the Brooklyn ImmunoTherapeutics name and will focus on the advancement of Brooklyn's program to further develop its cytokine-based drug for the treatment of various cancers.
>
> Brooklyn's chief executive officer Ron Guido, MS, MS Pharm. Med., stated, "We are pleased to reach an agreement with NTN Buzztime for the proposed merger. This provides us with the opportunity, once the merger is completed, to have our shares traded in the public market and to expand our investor base, which we believe will increase our ability to advance our clinical development program exploring the treatment of certain cancers using derived cytokines. We expect this merger will also enable us to expand our resources and expertise to build momentum in our drug development program. We believe that the merger will provide benefit to both the members of Brooklyn and the stockholders of NTN Buzztime."

Mr. Guido continued: "Brooklyn is focused on exploring the role that IRX-2, a cytokine-based investigational therapy, can have on the immune system in treating patients with cancer. IRX-2's active constituents, namely Interleukin-2 (IL-2) and other key cytokines, are postulated to signal, enhance and restore immune function suppressed by the tumor, thus enabling the immune system to attack cancer cells. Unlike existing recombinant IL-2 therapies, IRX-2 is naturally derived from human blood cells. This may potentially promote better tolerance, broader targeting, and natural molecular conformation leading to greater activity, and permit low physiologic dosing rather than high doses needed in existing IL-2 therapies. Our ongoing development program is specifically investigating use of IRX-2 in neoadjuvant (pre-surgical) and adjuvant (post-operative) treatment for advanced head and neck squamous cell cancer. IRX-2 has received both fast track designation and orphan drug designation from the FDA for this indication. Potential use of our product candidate in other cancer indications is also being evaluated in several investigator-sponsored trials. Finally, we are currently modifying our manufacturing process to allow us to develop additional drugs with a variety of cytokine mixtures to expand our product offerings."

Allen Wolff, chief executive officer of NTN Buzztime, stated, "This transaction reflects the continuing commitment of our management team and board of directors to deliver value to our stockholders. Following a thorough review of strategic alternatives, we determined that the proposed merger with Brooklyn is in the best interest of our stockholders. We are also continuing to explore the sale of substantially all of the assets of our current business to provide additional capital and to allow the combined company to focus exclusively on Brooklyn's business following the merger. While we are in discussions with multiple parties who are interested in purchasing those assets, no definitive agreement has been entered into to date."

**About the Proposed Merger**

Under the merger agreement, immediately following the closing of the merger, the members of Brooklyn collectively will own 94.08% of the outstanding common stock of the combined company and NTN Buzztime stockholders immediately prior to the closing of the merger collectively will own 5.92% of the outstanding common stock of the combined company, which percentages are subject to adjustment based on Brooklyn's cash and cash equivalents and NTN Buzztime's net cash balance at the closing, all as more particularly set forth in the merger agreement.

The merger agreement contains customary representations, warranties and covenants made by NTN Buzztime and Brooklyn, including covenants relating to both parties using their best efforts to cause the transactions contemplated by the merger agreement to be satisfied, covenants regarding obtaining the requisite approvals of NTN Buzztime stockholders and the beneficial holders of the Class A membership interests of Brooklyn, covenants regarding indemnification of directors and officers, and covenants regarding NTN Buzztime's and Brooklyn's conduct of their respective businesses between the date of signing of the merger agreement and the closing. The merger agreement also contains certain termination rights for both NTN Buzztime and

Brooklyn, and, in connection with the termination of the merger agreement under specified circumstances, NTN Buzztime and Brooklyn may be required to pay the other party a termination fee.

As a condition to the closing of the merger, Brooklyn has agreed that it will not have less than $10 million in cash and cash equivalents and not more than $750,000 of indebtedness for borrowed money at the closing. Certain beneficial holders of Brooklyn's Class A membership interests have entered into contractual commitments to invest $10 million into Brooklyn immediately prior to the closing of the merger. Further, as a condition to the closing of the merger, NTN has committed that the deficit in its net cash at the closing, as calculated under the merger agreement, will not exceed $3 million.

The combined company, led by Brooklyn's current management team, is expected to be named "Brooklyn ImmunoTherapeutics, Inc." and be headquartered in Brooklyn, NY. After the closing, the combined company is expected to trade on the NYSE American market under a new ticker symbol.

The merger agreement has been unanimously approved by the board of directors of NTN Buzztime, upon the recommendation of its strategic committee, and by the managers of Brooklyn. The NTN Buzztime board of directors have also recommended to NTN Buzztime's stockholders that they vote to approve issuance of the shares to the members of Brooklyn pursuant to the merger agreement, and the managers of Brooklyn have recommended to the beneficial holders of the Class A membership interests of Brooklyn that they approve the merger agreement and the merger. The transaction is expected to close in the fourth quarter of 2020, subject to approvals by the requisite stockholders of NTN Buzztime and beneficial holders of the Class A membership interests of Brooklyn described above, the continued listing of the combined company on the NYSE American, each of the company's meeting its capitalization or net cash condition, as applicable, and other customary closing conditions.

20. On September 18, 2020, NTN Buzztime entered into the Asset Purchase Agreement with eGames.com, pursuant to which NTN Buzztime agreed to sell all of its right, title and interest in and to the assets relating to the Company's business of licensing its interactive entertainment network and services and the tablets and related equipment used therein to eGames.com. At the closing of the asset sale, in addition to assuming the liabilities of NTN Buzztime specified in the Asset Purchase Agreement, including NTN Buzztime's trade accounts payable and other accrued liabilities arising in the ordinary course of the business, and liabilities relating to NTN Buzztime's contracts included in the purchased assets, eGames.com will pay NTN Buzztime $2.0 million in cash. A $1.0 million

bridge loan that eGames.com made to NTN Buzztime in connection with entering into the Asset Purchase Agreement will be applied toward the $2.0 million purchase price. Following completion of the asset sale, defendant Allen Wolff will be appointed as Chief Executive Officer of eGames.com.

**The S-4 Misleads NTN Buzztime Stockholders by Omitting Material Information**

21. On October 2, 2020, defendants filed the materially misleading and incomplete S-4 with the SEC. Designed to convince NTN Buzztime's stockholders to vote in favor of the Proposed Transaction, the S-4 is rendered misleading by the omission of critical information concerning: (i) the Company's and Brooklyn's financial projections and the data and inputs underlying the financial analyses that support the fairness opinion provided by the Company's financial advisor, Newbridge; and (ii) the background of the Proposed Transaction.

*Material Omissions Concerning NTN Buzztime's Financial Projections and Newbridge's Financial Analyses*

22. The S-4 omits material information regarding Company management's and Brooklyn's financial projections.

23. For example, the S-4 sets forth:

> In connection with its review and analysis performed to render its opinion, among other things, Newbridge:
>
> * * *
>
> - Reviewed certain information, including certain financial forecasts relating to the business, earnings, cash flow, capital raises and prospects of NTN Buzztime and Brooklyn that were furnished to Newbridge by NTN Buzztime and Brooklyn, respectively[.]

S-4 at 110. The S-4, however, fails to disclose the respective financial forecasts relating to the business, earnings, cash flow, capital raises and prospects of NTN Buzztime and Brooklyn.

24. Additionally, the S-4 omits material information regarding Newbridge's financial analyses.

25. The S-4 describes Newbridge's fairness opinion and the various valuation analyses

- 8 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

performed in support of its opinion. However, the description of Newbridge's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, NTN Buzztime's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Newbridge's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

26. With respect to Newbridge's *Discounted Cash Flow Analysis*, the S-4 fails to disclose: (i) quantification of Brooklyn's unlevered free cash flow for fiscal years 2026 through 2028 utilized in the analysis, to the extent not identical to the Brooklyn Expected Cash at FYE for years 2026 through 2028 (*see id.* at 116); (ii) the terminal values of Brooklyn; and (iii) Newbridge's basis for applying a perpetuity rate of 1.0%.

27. Without such undisclosed information, NTN Buzztime stockholders cannot evaluate for themselves whether the financial analyses performed by Newbridge were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Newbridge's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

28. The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following sections of the S-4: "Opinion of NTN Buzztime Financial Advisor" and "Brooklyn Financial Projections."

***Material Omissions Concerning the Background of the Proposed Transaction***

29. The S-4 fails to disclose material information concerning the background process leading to the Proposed Transaction.

30. For example, the S-4 fails to disclose the terms of the confidentiality agreements the

Company entered into with potential bidders and whether the confidentiality agreements contained standstill provisions and/or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and currently precluding these parties from making a topping bid for the Company.

31. The disclosure of the terms of the confidentiality agreements is crucial to NTN Buzztime stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

32. The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following section of the S-4: "Background of the Asset Sale and the Merger."

33. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

34. Plaintiff repeats all previous allegations as if set forth in full.

35. During the relevant period, defendants disseminated the false and misleading S-4 specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

36. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the S-4. The S-4 was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and Brooklyn's financial projections, the data and inputs underlying the financial analyses that support the fairness opinion provided by Newbridge, and the

background of the Proposed Transaction.  The defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

37. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

38. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

39. Because of the false and misleading statements in the S-4, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. The Individual Defendants acted as controlling persons of NTN Buzztime within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of NTN Buzztime, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

44. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The S-4 purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, NTN Buzztime's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NTN Buzztime, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to NTN Buzztime stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 29, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
　　　　-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS